[Cite as *Sanchez v. Vazquez*, 2023-Ohio-3914.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JENNIFER GIRON SANCHEZ | : | |
| | : | |
| Appellee | : | C.A. No. 29788 |
| | : | |
| v. | : | Trial Court Case No. 2018 DR 01121 |
| | : | |
| BENNY VAZQUEZ | : | (Appeal from Common Pleas Court-Domestic Relations) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

BENNY VAZQUEZ, Pro Se Appellant

JENNIFER GIRON SANCHEZ, Pro Se Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Benny Vazquez appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we will affirm the judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2} Jennifer Giron Sanchez and Vazquez were married on August 29, 2004. Three children were born of the marriage. Sanchez filed a complaint for divorce on December 21, 2018. The trial court issued its final judgment and decree of divorce on February 9, 2022. The trial court designated Sanchez as the residential parent and legal custodian of the children, ordered Vazquez to pay $987.01 per month in child support, ordered Sanchez to pay $719.20 per month in spousal support for 56 consecutive months, and divided the parties' property. Vazquez filed a timely notice of appeal from the trial court's judgment.

{¶ 3} On appeal, Vazquez contested, among other things, the trial court's custody determination and the calculation of child support and spousal support. On November 23, 2022, we issued our opinion and final entry in Vazquez's direct appeal from the trial court's final judgment and decree of divorce. *Sanchez v. Casiano*, 2d Dist. Montgomery No. 29415, 2022-Ohio-4179.[1] In our opinion, we concluded that:

> The trial court's decision to impute $60,000 of income to [Vazquez] without considering the factors set forth in R.C. 3119.01(C)(17)(a)(i)-(xi) constituted an abuse of discretion. Therefore, we reverse the trial court's judgment insofar as it relates to child and spousal support calculations and remand the matter for the trial court to calculate the proper amount of income to impute to [Vazquez] based on the statutory factors. In all other respects, the judgment of the trial court is affirmed.

---

[1] In that appeal, Vazquez was referred to as Benny Vazques Casiano.

*Id.* at ¶ 40.

**{¶ 4}** On April 18, 2023, the trial court issued its decision on remand. Pursuant to our mandate, the trial addressed the statutory factors set forth in R.C. 3119.01(C)(17) and imputed $34,416 of additional income to Vazquez. The trial court combined this amount with Vazquez's annual income from unemployment of $25,584.00, which resulted in total annual income of $60,000. On April 20, 2023, the trial court entered a final judgment and decree of divorce. Vazquez filed a timely notice of appeal, pro se.

II. The Trial Court Did Not Abuse Its Discretion on Remand When it Calculated the Amount of Income to Impute to Vazquez

**{¶ 5}** Vazquez's appellate brief fails to comply with App.R. 16 in several respects. His brief does not contain assignments of errors, page numbers, a table of contents, or a table of cases. Instead, Vazquez's appellate brief contains several lists and vague, conclusory statements. Further, Vazquez references prior decisions of the magistrate and trial court that are not at issue in this appeal, because they were either addressed or could have been addressed in the prior direct appeal. It is unclear what exactly Vazquez is requesting us to do. For example, Vazquez included the following "CONCLUSION" paragraph on the last page of his appellate brief:

> The lower court first decision on January 24th 2018, was non compliant and improper. Then the court abused the authority of the Judiciary Office, Obstructed Justice and Violated Appellant's and his children's rights, denying him Due Process, allowing and suppressing,

plaintiff excessive contemptuous actions activities and improper parental behaviors. Ultimately the lower court committed significant offences, and filed improper arbitrary discretionary orders, that suppressed facts, evidence, contradicting the lower court judgments. Finally, provided improper, misleading opinions as facts to support the false narrative presented along with the arbitrary discretionary orders.

{¶ 6} Under the "RELIEF" section of his appellate brief, Vazquez then stated:

After the Second District Court of Appeals confirm Appellants Declarations, take a hands on approach to correct the wrongdoings by the court against the appellant, file orders to restore to a position before the court's hostile intervention. Dismiss the Plaintiff Case and accept the Appellants original Answer and Counterclaim. Submit the lower court officers to the proper judicial disciplinary procedures.

{¶ 7} Although appellant's failure to set forth an assignment of error would justify striking the brief and, unless leave was granted to correct the deficiency, dismissing the appeal, we instead elect to dispose of the appeal on the merits of what we conclude to be the sole implied assignment of error manifested in his brief. On page two of his appellate brief, Vazquez refers to an "abuse of discretion assigning Defendant Income." We will construe this statement as a reference to the sole mandate we gave to the trial court on remand to address the statutory criteria set forth in R.C. 3119.01(C)(17)(a) relating to imputed income. As such, we will review the trial court's calculation of imputed income.

**{¶ 8}** This court reviews a trial court's imputation of income for an abuse of discretion. *In re S.E.*, 2d Dist. Montgomery No. 25743, 2013-Ohio-5057, ¶ 8, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). "An abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Steele v. Steele*, 2d Dist. Montgomery No. 25713, 2013-Ohio-3655, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 9}** R.C. 3119.01(C)(9) defines "income" as used in Chapter 3119 as: "(a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(12) defines "gross income" as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable[.]" The definition broadly identifies a wide spectrum of types and sources of income but excludes sources such as government disability benefits and nonrecurring or unsustainable income or cash flow. R.C. 3119.01(C)(12)(a)-(g).

**{¶ 10}** If a parent is unemployed or underemployed, "income" is defined differently. Under those circumstances, "income" is "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(9)(b). For a parent who the court determines is voluntarily unemployed or underemployed, R.C. 3119.01(C)(17) defines "potential income" as the total of two items: (1) "imputed income" that the court determines the parent would have earned if fully employed, as determined from 11 criteria, R.C. 3119.01(C)(17)(a)(i)-(xi); and (2) imputed income from non-income-producing assets of a parent, if the income is significant. R.C. 3119.01(C)(17)(b).

{¶ 11} R.C. 3119.01(C)(17)(a) lists the following criteria the trial court uses to determine the "imputed income" the parent would have earned if fully employed: (i) the parent's prior employment experience; (ii) the parent's education; (iii) the parent's physical and mental disabilities, if any; (iv) the availability of employment in the geographic area in which the parent resides; (v) the prevailing wage and salary levels in the geographic area in which the parent resides; (vi) the parent's special skills and training; (vii) whether there is evidence that the parent has the ability to earn the imputed income; (viii) the age and special needs of the child for whom child support is being calculated under this section; (ix) the parent's increased earning capacity because of experience; (x) the parent's decreased earning capacity because of a felony conviction; and (xi) any other relevant factor.

{¶ 12} In its April 18, 2023 decision, the trial court considered each of these statutory criteria and made the following findings: (i) Vazquez had 13 years in the banking industry and secured a positive reference letter from WesBanco despite a for-cause termination from his employment there; (ii) he had a high school education; (iii) Vazquez had stress but did not offer any diagnoses that would impact his earning capacity; (iv) he had looked exclusively for at-home employment but his testimony that he had sent out over 350 applications was not credible and he presented no credible evidence that he could not find employment similar to the work he had performed at WesBanco; (v) Vazquez earned $60,000 as a manager for three years and $40,000-$45,000 as a bank worker for ten years; (vi) his work history and experience was in banking; (vii) his previous earnings of $60,000 annually showed he had the ability to earn that income; (viii) his three

minor children attended private school and required afterschool and summer childcare; (ix) Vazquez had a long work history in banking with additional management experience; and (x) there was no evidence of any felony convictions.  April 18, 2023 Decision, p. 5-8.

{¶ 13} Based on its review of the criteria in R.C. 3119.01(C)(17)(a), the trial court concluded:

> The purpose of imputed income is to project income which a parent can reasonably obtain, given that parent's qualifications, employment history, salary history, and opportunities, in a situation where that parent has avoided appropriate employment usually with some level of disregard as to their support obligations.  * * *  After considering all of the relevant factors under R.C. 3119.01(C)(17)(a), it is found that Mr. Vazquez is capable of earning $60,000.00 per year.  Mr. Vaquez has 13 years of banking experience, coupled with additional management and supervisorial skills, and has been able to earn $60,000.00 in the past.  Mr. Vazquez did have a job earning $37,000.00 a year after he lost his management position, but it is found that neither the job nor the income aligns with his level of experience and skill.  Therefore, Mr. Vazquez is imputed additional potential income of $34,416.00 which, when added to the $25,584.00 he earns in unemployment, brings his income to $60,000.00.

April 18, 2023 Decision, p. 8-9.

{¶ 14} The trial court considered all the relevant statutory criteria before calculating

the amount of income to impute to Vazquez. Moreover, the record supports the findings made by the trial court on the amount of income to impute to Vazquez. As the trial court explained, Vazquez had limited himself as to what employment he had sought since his termination of employment from WesBanco. But Vazquez had not established a valid reason, whether medical or otherwise, to limit himself in his employment search given his experience and skills in the banking industry. Further, the trial court found his testimony regarding the attempts he had made to secure employment to be less than credible. We defer to the trial court's credibility determinations, because it is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Based on the record before us, we conclude the trial court did not abuse its discretion by calculating $34,416 of imputed income.

{¶ 15} Vazquez's sole implied assignment of error is overruled.

III.    Conclusion

{¶ 16} Having overruled the sole assignment of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . .


WELBAUM, P.J. and TUCKER, J., concur.